United States District Court
Southern District of Texas
**ENTERED**
November 12, 2020
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# LAREDO DIVISION

| | | |
|---|---|---|
| **JULIO OSORIO,** | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | **CIVIL ACTION NO. 5:19-CV-154** |
| | § | **CRIM. ACTION NO. 5:16-CR-946-3** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION

Before the Court is Petitioner Julio Osorio's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Dkt. No. 1).[1][2] On April 16, 2020, Osorio's motion was referred to the undersigned for findings of fact and recommendations of law. (Dkt. No. 19). The United States has filed a response in opposition (Dkt. No. 12) and Osorio has filed a reply. (Dkt. No. 27). Having reviewed the filings and the law, the Court will recommend that the motion be **DENIED.**

## I. Background

On August 2, 2016, a federal grand jury in the Laredo Division of the Southern District of Texas returned a thirteen-count indictment charging the petitioner, Julio Osorio ("Osorio"), with Conspiracy to transport undocumented aliens within the United States and five substantive counts of Transportation and Attempt to transport undocumented aliens for financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), (v)(I), (v)(II), and (a)(1)(B)(iii). (*See* Cr. Dkt. No. 56).

On September 8, 2016, Osorio entered a plea of guilty. (*See* Case No. 5:16-CR-946-3, Min. Entry for Sep. 8, 2016). Before his guilty plea, Osorio had entered into a plea

---

[1] For purposes of reference, "Dkt. No." indicates a citation to the record in Civil Action No. 5:19-CV-154. "Cr. Dkt. No." indicates a citation to the record in Petitioner's underlying criminal case, Criminal Action No. 5:16-CR-946-3.

[2] When citing to the page numbers of any document in the record, the Court will cite to the page numbering of the Court's internal CM/ECF docket system, and not to the page numbers in the underlying documents.

agreement with the government, under Fed. R. Crim. P. 11(c)(1)(A) and (B), in which he agreed to plead guilty to Count 1 of the indictment, Conspiracy to Kidnap, and waive his right to appeal both the conviction and sentence. (Cr. Dkt. No 99). In exchange, the Government agreed to move to dismiss the twelve remaining counts in the indictment at the time of sentencing. (*Id*. at 5).

At the September 8, 2016 re-arraignment hearing, the Magistrate Court summarized the written plea agreement in the presence of Osorio and counsel. (Cr. Dkt. No. 81 at 1). After the hearing, the Magistrate Court found that Osorio fully understood the nature of the charges and penalties, that his plea was made freely and voluntarily, and that he was competent to enter the plea of guilty. (*Id*. at 2).

The District Court adopted the Report and Recommendations of the Magistrate Court from the re-arraignment hearing. (Cr. Dkt. No. 104). On May 2, 2017, the District Court held Osorio's sentencing hearing. (*See* Case No. 5:16-CR-946-3, Min. Entry for May 2, 2017). The District Court determined that Osorio's level of offense was 39, category 2. (*Id*.). The District Court subsequently sentenced Osorio to 292 months of imprisonment. (Cr. Dkt. No. 170 at 2).

Osorio filed an appeal with the Fifth Circuit Court of Appeals. *United States v. Osorio*, 742 F.App'x 48 (5th Cir. 2018). In their decision, the Fifth Circuit held that "[Osorio's] appeal presents no nonfrivolous issue for appellate review" and dismissed his appeal. *Id*. at 49. The Fifth Circuit declined to consider any claims of ineffective assistance of counsel. *Id*. at 48.

The instant motion was timely filed on November 18, 2019. (Dkt. No. 1).[3] Construing Osorio's motion liberally,[4] Osorio puts forward two grounds for relief in his motion: (1) his counsel provided ineffective assistance when he did not read the entire plea agreement to him prior to pleading guilty, thereby rendering his guilty plea to be not knowingly and voluntarily entered; and (2) his counsel was ineffective for failing to investigate and object to the inclusion of sentencing enhancement U.S.S.G § 2A4.1(b)(1) based on double counting. (Dkt. No. 1 at 4–5; Dkt. 1-1 at 1–4).

---

[3] The Government's response concedes that Osorio's motion was timely filed. (Dkt. No. 12 at 14).

[4] Federal habeas petitioners proceeding pro se are entitled to liberal construction. *See Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011).

## II. Law

### A. Relief Under 28 U.S.C. § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam). The four grounds upon which a federal prisoner may move to vacate, set aside, or correct a sentence under § 2255 are: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is 'otherwise subject to collateral attack.'" *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (citations omitted). "The scope of relief under § 2255 is consistent with that of the writ of habeas corpus." *Id.*

The § 2255 petitioner carries the burden of establishing his claims by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980). However, after a petitioner has been convicted and exhausted his appeals or waived the right to appeal, a presumption arises that the petitioner "stands fairly and finally convicted," *United States v. Shaid*, 937 F.2d 228, 231–32 (5th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 164 (1982)) and "a collateral challenge may not do service for an appeal." *Frady*, 456 U.S. at 165. Non-constitutional claims that could have been raised on direct appeal but were not *may not be asserted in a collateral proceeding*." *Vaughn*, 955 F.2d at 368 (emphasis added).

### B. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to have the assistance of counsel at trial. *See* U.S. Const. amend. VI; *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). The right to counsel guaranteed by the Sixth Amendment includes "the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). Claims for ineffective assistance of counsel are analyzed under the following two-prong standard:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

> Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail, a petitioner must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390–91 (2000).

The first prong of the governing standard is only satisfied where the petitioner shows that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687. Scrutiny of counsel's performance is "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. To prove the second prong—prejudice—a petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The two-part *Strickland* standard applies to ineffective assistance of counsel claims arising out of a guilty plea. *United States v. Smith*, 915 F.2d 959, 963 (5th Cir. 1990). A claim of ineffective assistance on appeal is also governed by the test set out in *Strickland*, which requires the petitioner to establish both constitutionally deficient performance and actual prejudice. *See Smith v. Murray*, 477 U.S. 527, 535–36 (1986) (applying *Strickland* to a claim of ineffective assistance of counsel on appeal).

To establish prejudice in relation to a guilty plea, the petitioner must demonstrate that there was a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366 (1985). "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

To establish prejudice regarding a term of sentencing, a petitioner must demonstrate that there was a reasonable probability that, but for [Counsel]'s actions,

[Petitioner] would have received a lesser sentence than he did." *United States v. Grammas*, 376 F.3d 433, 438 (5th Cir. 2004).

### III. Discussion

Osorio raises two grounds for relief in his motion: (1) his counsel provided ineffective assistance when he did not read the entire plea agreement to him prior to pleading guilty, thereby rendering his guilty plea to be not knowingly and voluntarily entered; and (2) his counsel was ineffective for failing to investigate and object to the inclusion of sentencing enhancement pursuant to U.S.S.G § 2A4.1(b)(1) based on double counting. (Dkt. No. 1 at 4–5; Dkt. 1-1 at 1–4). Each ground is discussed separately below.

#### A. Osorio's Guilty Plea was Given Knowingly and Voluntarily

Osorio first argues that his guilty plea was not knowingly and voluntarily entered due to ineffective assistance of counsel. (Dkt. No. 1 at 4). Osorio claims that when his counsel presented the plea agreement on September 8, 2016, Osorio could not read it for himself due to his loss of sight. (Dkt. No. 1-1 at 2). Counsel proceeded to read the plea agreement to Osorio and encouraged Osorio to sign the agreement. (*Id.*). However, Osorio claims that once he was able to read the agreement for himself, there were portions of the agreement that his counsel did not read to him. (*Id.* at 3). Specifically, Osorio claims that counsel did not read paragraphs five and six to him, which state as follows:

> 5. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed with be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, [and] not oppose the forfeiture of assets contemplated in paragraph 22 of this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.
>
> 6. Defendant understands and agrees that "fully cooperate," as the term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to kidnapping and harboring of undocumented aliens. Defendant understands that such information includes both state and federal offenses arising therefrom. In

that regard:

(a) Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his/her Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d) Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (civil or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e) Defendant agrees to provide to the United States all documents in his/her possession or under his/her control relating to all areas of inquiry and investigation; and

(f) Should the recommended departure, if any, not meet Defendant's expectation, the Defendant understands that he/she remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his/her plea.

(*Id.* at 3–4).

Osorio alleges that if he had been aware that these two paragraphs were in the agreement, he would have not signed the agreement and proceeded to trial "unless the government would have agreed to remove those paragraphs from the plea agreement." (*Id.* at 4). Osorio explains that based on a plain reading of these paragraphs, he believes he is bound to cooperate with the Government at their request. (Dkt. No. 27 at 10). Osorio further claims that this language puts him in immediate danger within the Bureau of Prisons because of his affiliation with the "Los Zetas" gang. (*Id.* at 10–11). Osorio argues that he "trusted that counsel read every portion of the plea," and the failure to do so constitutes ineffective assistance of counsel. (*Id.* at 12).

In response, the Government argues that the Fifth Circuit has already held that Osorio's guilty plea was made knowingly and voluntarily, and to argue otherwise would be frivolous. (Dkt. No. 12 at 19). They additionally argue that Osorio's argument is meritless, as the quoted portions of the plea agreement only discuss "potential" circumstances in which the Government would move for a departure under U.S.S.G. § 5K1.1 in the event that Osorio provided "substantial assistance" to the United States. (*Id*. at 21). The Government asserts that Osorio never indicated that he wanted to offer assistance to the Government, and therefore they never made a motion for departure. (*Id*. at 22). The Government counters that a plain reading of the plea agreement reveals that Osorio was never bound to cooperate with the Government. (*Id*.).

In an attached affidavit, Osorio's counsel states that he read and explained the details of a plea agreement at his Arraignment hearing on August 11, 2016 "using an older plea agreement from another client." (Dkt. No. 12-4 at 3). Osorio's counsel further explained that he spoke to Osorio on August 24, 2016, at the Rio Grande Detention Facility about the proposed plea agreement. (*Id*. at 4). Osorio's counsel does not state that he read Osorio the current plea agreement word for word. (*See id*. at 1–7). However, he does assert that the language in question is standard "boiler plate language that every plea agreement in the Laredo Division of the Southern District of Texas has." (*Id*. at 3).

On direct appeal, the Fifth Circuit held that "Mr. Osorio represented to the court that he had discussed the terms of this plea agreement with his counsel, that he fully understood the agreement and was entering into it voluntarily, and that he personally has signed the plea agreement." (Dkt. No. 12-1 at 15). Thus, there is "no nonfrivolous challenge to Mr. Osorio's conviction or sentence. Mr. Osorio made a valid waiver of his right to appeal the sentence in his plea agreement." (*Id*. at 16). However, the Fifth Circuit also held that "[t]he record is not sufficiently developed to allow us to make a fair evaluation of Osorio's claims of ineffective assistance of counsel." *United States v. Osorio*, 742 F. App'x 48 (5th Cir. 2018). Therefore, Osorio's current claims are ripe for review.

Under *Strickland*, Osorio must show that his counsel's performance was both deficient and prejudicial in order to succeed on his claim. *Strickland*, 466 U.S. at 687. Based on the record, the Court does not see action from counsel that rises to the level of deficiency such that "counsel's representation fell below an objective standard of

reasonableness." *Id*. Counsel met with Osorio three separate times to discuss the plea agreement before the September 8, 2016 re-arraignment hearing. (Dkt. No. 12-4 at 2–5). The record also reflects that counsel was present at all critical stages of the proceeding. While the record does not reflect that counsel read Osorio his plea agreement word for word, the Court does not believe that this action alone constitutes deficient representation. Osorio had the plea agreement explained to him multiple times and admitted that he did not have any questions regarding the plea agreement at his re-arraignment hearing. The Fifth Circuit has already held that Osorio's plea of guilty was made "knowingly and voluntarily." (Dkt. No. 12-1 at 14).

Even if the Court found that counsel's failure to read the plea agreement word for word constituted deficient representation, the Court does not believe that such action led to any prejudice to Osorio. Osorio must show that but for his counsel's actions, there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59. However, Osorio's statement alone is not enough. There must be "contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee*, 137 S. Ct. at 1967.

The Court does not find any contemporaneous evidence in the record to support Osorio's assertion that he would have gone to trial but for his counsel's actions. On the contrary, the record supports that Osorio would have still taken a plea agreement. Osorio states that he would have taken the plea if "the government would have agreed to remove those paragraphs from the plea agreement." (Dkt. No. 1-1 at 4). Osorio claims he was prejudiced because the inclusion of those paragraphs in his plea agreement puts him in potential danger of retaliation by the Los Zetas gang in his detention facility. He further asserts that his counsel's failure to read paragraphs five and six led him to sign a plea agreement that compels him to cooperate with the Government. Osorio's understanding of these paragraphs is incorrect. The Court agrees with the Government's interpretation of these paragraphs to the effect that Osorio is not required to cooperate with the Government. Therefore, he has suffered no prejudice.

Additionally, Osorio never expressed an interest in cooperating with the Government, and the Government never made a departure motion pursuant to 5K1.1, as provided in the sections in question. Thus, while the language is included in the plea, the

sections are in practice moot, as no action was ever taken on the specific language. Osorio has already been sentenced in his criminal matter, and the Government never expressed an intention to file a departure motion with respect to Osorio.

The Court does not find persuasive Osorio's argument that he is in danger in the Bureau of Prisons System because of the inclusion of this language in the plea agreement. As stated earlier, Osorio never cooperated with the Government, and has not testified in any other criminal matter as an informant witness. Additionally, the Court agrees that this specific language is boiler plate language that is included in a majority of plea agreements in the Laredo Division of the Southern District of Texas. Thus, there is no prejudice to Osorio due to the inclusion of this language. He has not met his burden of showing that but for this language, he would have gone to trial.

Because Osorio cannot meet the *Strickland* standard of showing both deficient and prejudicial representation due to counsel's failure to read the entire plea agreement, Osorio's claim for ineffective assistance of counsel on this ground should be **DENIED**.

### B. Counsel's Failure to Object to Enhancement Language as Double Counting Does Not Constitute Ineffective Assistance of Counsel

Osorio's second claim is that his counsel was ineffective for failing to investigate and to object to the inclusion of a sentencing enhancement for a ransom demand based on double counting. (Dkt. No. 1 at 5). Osorio received a six-point enhancement under the United States Sentencing Guidelines ("U.S.S.G") due to a ransom demand. (Dkt. No. 1-2 at 1). At his Sentencing Hearing, the Court held that Osorio's total offense level was 39, category 2. (*See* Case No. 5:16-CR-946-3, Min. Entry for May 2, 2017). Therefore, his sentencing range according to the U.S.S.G. was 292–365 months of imprisonment. U.S.S.G Chapter 5, Part A. The Court sentenced Osorio to 292 months of imprisonment. (Cr. Dkt. No. 170 at 2). Without the six-point enhancement, Osorio's sentencing range would have been 151–188 months of imprisonment. U.S.S.G Chapter 5, Part A.

Osorio argues that the ransom enhancement should have been struck because one of the elements of kidnapping is a defendant holding a person "for ransom or reward or otherwise." (Dkt. No. 1-2 at 1; *see* 18 U.S.C. § 1201(a)). Therefore, the inclusion of a ransom enhancement constitutes double counting. (Dkt. No. 1-2 at 1). Osorio argues that because his counsel did not object to the enhancement on this ground, his actions

constituted ineffective assistance of counsel, as he would have received a significantly lesser sentence. (*Id*. at 1–2).

The Government responds that Osorio's claim is not an ineffective assistance of counsel claim, but rather a "thinly veiled attack on the district court's technical application of the Sentencing Guidelines." (Dkt. No. 12 at 27). The Government also argues that Osorio's counsel researched this issue and found a case from a different circuit which squarely rejected Osorio's argument. (*Id*. at 29; *see* Dkt. No. 12-4 at 5–6; *United States v. Acevedo*, 824 F.3d 179, 184–85 (1st Cir. 2016); *see also United States v. Vizcarra,* 668 F.3d 516, 527 (7th Cir. 2012)). Therefore, Osorio's counsel did not have to make an objection that he knew would fail. (Dkt. No. 12 at 30). Finally, the Government cites to *Cedillo-Narvaez*, a Fifth Circuit case finding that "[e]ven if a demand for ransom was an element of the offense, [petitioner]'s argument would nonetheless fail because double counting is not prohibited here. '[D]ouble counting is prohibited only if the particular guidelines at issue specifically forbid it.'" *United States v. Cedillo-Narvaez*, 761 F.3d 397, 403 n.4 (5th Cir. 2014) (quoting *United States v. Barraza*, 655 F.3d 375, 384 (5th Cir. 2011)) (quotations omitted).

Here, Osorio's claim of ineffective assistance of counsel fails from the outset. Even if the Court were to find that this was a legitimate claim of ineffective assistance and not an appeal of the district court's application of the U.S.S.G., Osorio would still need to meet the *Strickland* standard.[5] Additionally, even if the Court found that counsel's failure to object was deficient,[6] Osorio must show a prejudicial effect. The Fifth Circuit precedent is clear that there is no prejudicial effect due to counsel's failure to object on this ground. Based on the holding in *Cedillo-Narvaez*, an objection to the inclusion of a ransom enhancement due to double counting would fail, because the language of U.S.S.G.

---

[5] The Court notes that an appeal of the district court's technical application of the U.S.S.G. is not a proper claim in a 28 U.S.C. § 2255 proceeding. *See e.g., United States v. Payne*, 99 F.3d 1273, 1281 (5th Cir. 1996); *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994); *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992). On its face, Osorio's claim appears to be an appeal of the district court's application of the U.S.S.G. rather than a true claim of ineffective assistance of counsel. However, the Court will entertain a *Strickland* analysis to the benefit of the pro se petitioner.

[6] The Court further notes that in order for counsel's failure to object to be deemed deficient, that decision must be "so ill chosen that [it] permeate[s] the entire trial with obvious unfairness." *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009). The Court does not believe that counsel's failure to object to the ransom enhancement qualifies as such. Regardless, as explained, it is clear that counsel's action did not lead to any prejudicial effect. Therefore, Osorio fails to meet his burden under *Strickland*.

§ 2A4.1(b)(1) does not specifically forbid double counting. Osorio cannot show with any probability that "but for [counsel]'s actions, [Osorio] would have received a lesser sentence than he did." *Grammas*, 376 F.3d at 438.

Osorio contends that his matter is factually different from *Cedillo-Narvaez* because the petitioner in that case was not charged with a crime that had ransom as an element. (Dkt. No. 27 at 15). However, the court in *Cedillo-Narvaez* directly addressed that issue, holding that an objection to a ransom enhancement would have failed even when ransom is an element of the underlying offense. *See Cedillo-Narvaez,* 761 F.3d at 403 n.4. Thus, it is clear to the Court that any objection from Osorio's counsel to the ransom enhancement based on double counting would have failed, and the outcome of Osorio's sentencing hearing would have been the same. Osorio is not prejudiced by his counsel's failure to make a meritless objection. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim[.]"); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.").

Because there is no prejudice to Osorio, Osorio's second ground for relief should be **DENIED**.

### IV. Certificate of Appealability

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") converted the "certificate of probable cause" ("CPC") required to appeal from the denial of a petition for federal habeas corpus relief, including the denial of § 2255 motions to vacate, into a Certificate of Appealability ("CoA"). To appeal the denial of a habeas corpus petition filed under 28 U.S.C. § 2255, the petitioner must obtain a CoA. Appellate review of a habeas petition is moreover limited to the issues on which a CoA is granted. In other words, a CoA is granted or denied on an issue-by-issue basis, thereby limiting appellate review to solely those issues on which CoA is granted.

A CoA to appeal the denial of a habeas corpus petition shall be granted only upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The showing necessary to obtain a CoA on a particular claim depends upon the manner in which the district court has disposed of a claim. If the Court rejects a prisoner's

constitutional claim on the merits, he must then demonstrate that reasonable jurists could find the Court's assessment of the constitutional claim to be debatable or wrong. If the petitioner wishes to challenge this Court's dismissal of a claim for a reason not of constitutional dimension, such as procedural default, limitations, or lack of exhaustion, he must show that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and whether this Court was correct in its procedural ruling. The district court is authorized to address the propriety of granting a CoA sua sponte, without further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

After considering the entire record, the Court concludes that jurists of reason would not debate whether Osorio has stated a valid claim for relief or whether a procedural ruling in this case is correct. Accordingly, the Court recommends that a CoA should not issue in this case because Osorio has not made a substantial showing of the denial of a constitutional right.

### V. Petitioner's Motion for Appointment of Counsel

Also before the Court is Osorio's Motion re: Requesting the Courts to Grant Petitioner Counsel due to National Crisis (Dkt. No. 24). Osorio was granted several extensions for filing a reply to the government's response due to the restrictive conditions on prisoner movement imposed on him due to the COVID-19 pandemic. On July 20, 2020, Osorio filed this motion seeking appointment of counsel. for the sole purpose of drafting his reply. (*Id.* at 2). Osorio states, "There is no way possible for me to respond to the government reply without the use for the law library. With this being the case, I cannot move forward and respond to the government's reply." (*Id.*). Though Osorio was granted an extension to October 19, 2020 (Dkt. No. 25), he filed a reply on August 18, 2020. (Dkt. No. 27). Because Osorio has filed a reply—the sole basis for his motion for appointment of counsel—the Court recommends that Osorio's Motion re: Requesting the Courts to Grant Petitioner Counsel due to National Crisis (Dkt. No. 24) be **DENIED as moot**.

### VI. Conclusion

Having carefully reviewed the record and the relevant law, this Court finds that "the record is clearly adequate to dispose fairly of the allegations," thus a hearing is unnecessary. *Smith*, 915 F.2d at 964. This Court further recommends that Osorio's Motion

Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Dkt. No. 1) be **DENIED**. It further recommends that his motion be **DISMISSED** with prejudice, and that a CoA not issue.

## VII. Notice of Right to Object

Within fourteen days after being served with a copy of this Report and Recommendation, the parties may file written objections to the findings and recommendations proposed above. 28 U.S.C. § 636(b)(1). The District Judge will review de novo those portions of the report or specified proposed findings or recommendations to which the party objects. The District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by this Court, and may also receive further evidence or recommit the matter to this Court with instructions. *Id.* The district court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). If a party does not object within fourteen days, the party forfeits its right to district court review. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court, except on grounds of plain error or manifest injustice.

The Clerk of the Court is **DIRECTED** to mail Petitioner a copy of this Order by any receipted means at the address indicated in his most recent filing.

**SIGNED** on November 12, 2020.

John A. Kazen
United States Magistrate Judge